UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANKLIN EZEQUIEL SALGADO BUSTOS,

        Petitioner,                                        No. 25-13202

v.                                                  Honorable Nancy G. Edmunds

KEVIN RAYCRAFT, Immigration and
Customs Enforcement, Detroit Field Office,
Director of Enforcement and Removal
Operations; U.S. DEPARTMENT OF
HOMELAND SECURITY; KRISTI
NOEM, Secretary, U.S. Department of
Homeland Security; PAMELA BONDI,
U.S. Attorney General,

        Respondents.
_____/

**OPINION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS [1]**

Petitioner Franklin Ezequiel Salgado Bustos (Salgado Bustos) filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (ECF No. 1.) Salgado Bustos asserts that Respondents have detained him in violation of the Immigration and Nationality Act (INA) and that his continued detention violates his Fifth Amendment right to due process. Salgado Bustos, a Nicaraguan citizen, is being held at North Lake Correctional Facility in Baldwin, Michigan pending immigration proceedings to remove him from the United States and for determination of his asylum application.

The Court held a hearing on Salgado Bustos' Petition for Writ Habeas Corpus on October 27, 2025. For the reasons below, the Court finds that Salgado Bustos' mandatory detention is unlawful and a violation of his due process rights and orders his immediate

release. Accordingly, the Petition for Writ of Habeas Corpus is GRANTED. In addition, the Court will dismiss all Respondents except for Salgado Bustos' immediate custodian, Acting ICE Field Office Director Kevin Raycraft.

**I.     Background**

Mr. Salgado Bustos is a Nicaraguan citizen who unlawfully entered the United States without inspection or admission near Calexico, California, on November 20, 2022. A Customs and Border Patrol (CPB) official encountered and arrested Salgado Bustos at the border. An immigration officer determined Salgado Bustos entered the United States unlawfully, lacking valid immigration documents, which rendered him inadmissible under 8 U.S.C. § 1182(a)(6) and (a)(7). During his detention, Salgado Bustos claimed that he feared persecution if he was returned to Nicaragua.

On November 22, 2022, the Department of Homeland Security (DHS) granted Salgado Bustos temporary parole under 8 U.S.C. § 1182(d)(5)(A) and released him into the United States. DHS issued Salgado Bustos a Form I-385 Notice to Report, which required him to report to a U.S. Immigration and Customs Enforcement (ICE) office near his final destination within 60 days. Salgado Bustos reported to the ICE Detroit office as directed on January 20, 2023. At the check in, he received a DHS Form G-56 Call-In Letter, which required him to present himself to the Detroit ICE office on March 26, 2025, for "processing and issue NTA [Notice to Appear]."

Salgado Bustos reported to the Detroit ICE office on March 26, 2025. By this time, he had been living continuously in Ann Arbor, Michigan for over two years. He had a pending asylum application with United States Citizenship and Immigration Services (USCIS) since November 20, 2023. USCIS issued him a work permit on May 18, 2024.

Salgado Bustos's parole expired in 2023, but he had not re-detained. On March 26, 2025, ICE did not issue Salgado Bustos a Notice to Appear (NTA) or an order of expedited removal. Rather, ICE officers instructed him to return for a follow-up check-in with all of his immigration documentation on September 28, 2025.

Salgado Bustos went to the ICE Detroit office on Sunday, September 28, 2025, but the office was closed. Salgado returned on September 29 and showed the ICE officer his asylum application, a photo of his work permit, which was valid through 2029, and his passport. The ICE officer arrested Salgado Bustos and entered an order of expedited removal under 8 U.S.C. § 1225(b)(1)(A)(iii). (ECF No. 5-4, PageID.65-66.) Salgado Bustos told the officer he feared persecution if returned to Nicaragua (ECF No. 5-2, PageID.59; Walker Decl., ¶ 10). The officer took Salgado Bustos' documents described above as well as his driver's license, social security card, car title, loan documents, paystubs, and wallet.

An ICE official gave Salgado Bustos a document which the interpreter said was for him to pursue his asylum case while in detention. (ECF No. 8-2, PageID.94; Salgado Bustos Decl. at ¶21.) Salgado signed the document, which was in fact an expedited removal order. (*Id.*)

Since Salgado Bustos filed his habeas petition, USCIS scheduled a credible fear interview (CFI), which was conducted telephonically on October 14, 2025. (Daniel Decl. ¶¶ 4-9.) Salgado Bustos' immigration attorney attended the CFI. Following the CFI, Salgado Bustos's asylum application was administratively closed. (Walker Decl., ¶7, ECF No. 5-2, PageID.58; Marin Decl., ¶¶ 4-5.) On October 17, 2025, Respondents informed Salgado Bustos that he had not passed his CFI. (Marin Decl., ¶ 3.) Salgado Bustos

3

invoked his right to have an Immigration Judge review the denial of his CFI. *Id*. On October 21, 2025, ICE docketed Salgado Bustos' request for an Immigration Judge's review of the CFI determination, and he is scheduled to appear before an Immigration Judge in Detroit following a decision by this Court on his habeas petition.

In his habeas petition, Salgado Bustos challenges Respondents' application of the expedited removal procedures and mandatory detention provisions under 8 U.S.C. § 1225(b)(1). He does not challenge the decisions made by USCIS during his CFI or his underlying affirmative asylum application. Salgado Bustos maintains that Respondents are holding him in physical custody without following the INA and its regulations, and in violation of his due process rights under the U.S. Constitution. As relief, Salgado Bustos argues this Court should order his immediate release. Salgado Bustos also asks the Court to rescind the expedited removal order issued on September 29, 2025; require the government to issue a Notice to Appear which would place him in Section 240 removal proceedings; and require the reopening of his asylum application with USCIS.

**II.      Respondents other than the ICE Field Office Director will be dismissed**

A writ of habeas corpus may only be issued "to the person having custody of the person detained." 28 U.S.C. § 2243. Courts interpret a detained noncitizen's immediate custodian as "the person exercising daily control over his affairs," such as "the warden of the facility where the alien is detained or the INS District Director of the district where the alien is being detained." *Roman v. Ashcroft*, 340 F.3d 314, 320 (6th Cir. 2003).

Respondents in this case include the Acting Director of the Detroit Field Office of the Immigration and Customs Enforcement's Enforcement and Removal Operations division Kevin Raycraft; the Department of Homeland Security (DHS); the Secretary of

4

DHS Kristi Noem; and United States Attorney General Pamela Bondi. Salgado Bustos names the individual defendants in their official capacities.

Salgado Bustos acknowledges that Acting ICE Field Office Director Raycraft is his immediate custodian. (ECF No. 1, PageID.7.) Therefore, Respondents ask the Court to dismiss the petition against all of them except Raycraft. Salgado Bustos argues that DHS, the Attorney General, and the Secretary of Homeland Security are also proper respondents because this agency and these individuals have ultimate authority over immigration enforcement and adjudication and keeping them in the litigation will ensure any order issued by the court will be complied with by the relevant agencies. Courts have allowed a petitioner to name respondents other than the immediate custodian in extraordinary or unusual circumstances. *Roman*, 340 F.3d at 324-25. For example, the Attorney General has been permitted to be named as a respondent in a noncitizen's habeas corpus petition where the location of the petitioner is unknown or there is fear he may be transferred to another INS facility in another state. *See id.* at 325-26 (citing cases). This concern does not exist here because the Court ordered that "Respondents are enjoined from transferring, relocating, or removing Petitioner from the Eastern District of Michigan without further order of this Court and pending final resolution of this matter." (ECF No. 3, PageID.28.)

The Court finds that Acting ICE Field Office Director Raycraft is the proper Respondent and will dismiss all others from the petition.

### III.    Jurisdiction Over Petitioner's Challenge

Salgado Bustos asserts an as-applied challenge of Respondent's detention of him based on an allegedly unlawful application of 8 U.S.C. § 1225(b)(1). The parties agree

5

that a request for release from detention is proper habeas relief. However, Respondents argue that the Court lacks jurisdiction to review removal orders under § 1225(b)(1). *See* 8 U.S.C. § 1252(a)(2)(A). The INA does bar most judicial review unless a petitioner's claim falls under the exceptions in § 1252(e). Section 1252(e)(2) preserves judicial review, in the form of a habeas corpus proceeding, of individual expedited removal orders issued under § 1225(b)(1) as to determinations of: (A) whether the petitioner is a noncitizen, (B) whether the petitioner was ordered removed under the expedited removal statute, and (C) whether the petitioner has been lawfully admitted or granted asylum.

Section 1252(e)(5) provides that "[i]n determining whether an alien has been ordered removed under section 1225(b)(1) of this title, the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner." 8 U.S.C. § 1252(e)(5). This language in turn has been interpreted as requiring that the expedited removal statute is lawfully applied to petitioner. Federal courts have jurisdiction to determine "whether the expedited removal procedure 'relates to' petitioners in the sense that it lawfully applies to them. If the statute has not been lawfully applied, the question then becomes whether the unlawful application has violated petitioners' constitutional rights." *Am.-Arab Anti-Discrimination Comm. v. Ashcroft*, 272 F. Supp. 2d 650, 663 (E.D. Mich. 2003).

Here, Respondents acknowledge that they did not issue Salgado Bustos an expedited removal order when he crossed the border in November 2022 or when his parole expired. In his petition, Salgado Bustos contends the government did not have the lawful authority to initiate § 1225(b)(1)'s expedited removal process against him after he had been paroled into the United States and has lived in the country continuously for over

6

two years. Salgado Bustos does not argue the constitutionality of the expedited removal process itself, but the government's implementation of the process to order mandatory detention under the circumstances of his case. *See E.V. v. Raycraft*, No. 4:25-cv-2069, 2025 WL 2938594, at \*7 (N.D. Ohio Oct. 16, 2025) (finding the court had jurisdiction to assess petitioner's detention-based claims separate from constitutionality of expedited removal order).

Respondents rely on *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 112-13 (2020), where the Supreme Court held that U.S. district courts lack jurisdiction to hear challenges to the implementation of an expedited removal order under the federal habeas statute. Here, Salgado Bustos challenges whether his detention was imposed on him under the proper authority, as opposed to challenging an expedited removal order or the wholesale constitutionality of the procedures contained in § 1225(b)(1). *Cf. Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (Section 1226(e) precludes a noncitizen from challenging the Attorney General's discretionary detention decisions, but "'does not preclude' challenges to the statutory framework that permits the alien's detention without bail.").

The Court concludes that § 1225 does not strip the Court's power to review Salgado Bustos' narrow claims and to grant appropriate relief. The Court finds that it has jurisdiction over Salgado Bustos' habeas petition which challenges Respondents' authority to detain him under § 1225(b) where at the time of his arrest he had been admitted or paroled into the United States, had lived continuously in the country for over two years, and was not at a port of entry.

7

### IV. Exhaustion

Respondents contend that Salgado Bustos must exhaust his administrative remedies before he may proceed with his habeas petition. "Where Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992).

The INA requires exhaustion for appeals on final orders of removal. See 8 U.S.C. § 1252(d)(1). But here, there has not been a final order of removal and Salgado Bustos challenges his detention. When neither a statute nor rule mandates exhaustion, it is within the Court's "sound judicial discretion" whether to require exhaustion. *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013). This is also known as "prudential exhaustion." The Sixth Circuit has not decided whether courts should apply prudential exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention. *See Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (citing *Hernandez v. U.S. Dep't of Homeland Sec.*, No. 1:25CV01621, 2025 WL 2444114, at *8 (N.D. Ohio Aug. 25, 2025)).

However, even assuming that exhaustion is required in this context, a court can waive exhaustion requirements in circumstances where (1) the legal question is "fit" for resolution and delay means hardship, or (2) when exhaustion would prove "futile." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000). Both scenarios exist here, so this Court finds that waiving any prudential exhaustion requirements is appropriate. In addition, the Sixth Circuit has noted that due process challenges, such as the one raised by Salgado Bustos, generally do not require exhaustion because the BIA cannot review constitutional challenges. *See Sterkaj v. Gonzalez*, 439 F.3d 273, 279 (6th Cir. 2006).

8

For the reasons given, Salgado Bustos's challenge to his detention does not require exhaustion.

## V.      Statutory Framework

In the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRAIRA), Congress established two main processes for removing noncitizens deemed ineligible to enter or remain in the United States. In *Coalition for Humane Immigrant Rts. v. Noem*, No. 25-CV-872, 2025 WL 2192986, at *3 (D.D.C. Aug. 1, 2025), the D.C. District Court provided a description of the two avenues of removal. Section 240 proceedings are the standard mechanism for removing inadmissible noncitizens. 8 U.S.C. § 1229a. Such proceedings take place before an Immigration Judge who has the duty to develop the record. § 1229a(a)(1), (b)(1). The hearing is adversarial, is recorded, and is subject to review. When it was enacted, Congress described Section 240's framework as a "single form of removal proceeding" "[f]or illegal aliens already present in the U.S." H.R. Rep. 104-469, at 12, 107–08 (1996).

The second process is referred to as expedited removal. Under this scheme, an immigration officer conducts initial fact-finding by asking a series of questions and determines if the noncitizen is admissible. 8 C.F.R. § 235.3(b)(2)(i). If the noncitizen is inadmissible and does not indicate an intent to apply for asylum, the inspecting officer issues a notice and order of expedited removal. Once a supervising officer reviews and signs off on the determination, the noncitizen is ordered removed. *Id*.

If the noncitizen asserts an intention to apply for asylum, they are referred to a "credible fear interview," conducted by an asylum officer. 8 C.F.R. § 235.3(b)(4). If the asylum officer finds the noncitizen to have a credible fear of persecution, the noncitizen

9

will be moved either to full Section 240 removal proceedings or to USCIS administrative asylum proceedings. *Id*. § 208.30(f). But if the officer makes a negative credible fear determination, a supervisory officer will review the determination. *Id*. § 208.30(e)(8). If the supervisor agrees, the noncitizen can request review by an IJ. *Id*. § 208.30(g). The IJ's review "is meant to conclude within 24 hours" and is final. *Make The Rd. New York v. Wolf*, 962 F.3d 612, 619 (D.C. Cir. 2020). With narrow exceptions, no further administrative or judicial review is available. *Id*.; *Coalition*, 2025 WL 2192986, at *3.

**VI.     Petitioner's Detention under 8 U.S.C. § 1225(b)(1)**

Here, Respondents are proceeding under the expedited removal process. Section 1225 controls the Government's determination of the admissibility of noncitizens seeking to enter the country, which "generally begins at the Nation's borders and ports of entry." *Jennings*, 583 U.S. at 287. In addition to affording the government the ability to quickly deport an individual, the process of expedited removal requires detention during the administrative proceedings. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). This clause states that any applicant for admission who claims asylum "shall be detained" pending a determination of a credible fear of persecution or "until removed," as applicable. *Id*. Here, Salgado Bustos claimed asylum, but due to a lack of detention capacity he was granted parole into the United States.

When interpreting a statute, a court's "inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). In many cases, the meaning of "of certain words or phrases may only become evident when placed in context." *In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022). "It is 'a cardinal principle of statutory construction' that a 'statute ought,

10

upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citation omitted).

Section 1225(b)(1)(A) describes screening procedures for aliens arriving in the United States and "certain other aliens who have not been admitted or paroled." Another court in this district recently analyzed the title of § 1225 – "Inspection by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing" – and determined that "[t]he use of "arriving" to describe noncitizens strongly indicates that the statute governs the *entrance* of noncitizens to the United States. This reading is bolstered by the fact that § 1225 clearly establishes an inspection scheme for when to let noncitizens into the country." *See Pizarro Reyes*, 2025 WL 2609425, at *5 (emphasis added).

When Salgado Bustos arrived at the United States' southern border in November 2022, he was deemed inadmissible under § 1225(b)(1)(A)(i). That determination is not disputed here. Salgado Bustos' habeas petition relates to his mandatory detention issued on September 29, 2025. At that time, Salgado Bustos had been living in the United States, far from the southern border, for almost three years and maintains he was no longer an "arriving alien" for purposes of § 1225(b)(1)(A)(i). The Court agrees. However, § 1225(b)(1)(A)(iii)(II) describes "certain other aliens" who are also subject to the statute's expedited removal and mandatory detention:

> An alien described in this clause is an alien who is not described in subparagraph (F), who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

11

8 U.S.C. § 1225(b)(1)(A)(iii)(II).

The first requirement of § 1225(b)(1)(A)(iii)(II) is that the noncitizen "has not been admitted or paroled into the United States." The parties agree Salgado Bustos was not admitted into the United States as that term is used in the INA. However, he was paroled into the country on November 22, 2022. (ECF No. 5-3, PageID.62.) Respondents note that Salgado Bustos' parole has since expired and cite to 8 U.S.C. § 1182(d)(5) to argue that the termination of parole requires his return to detention and that the expired parole has no effect on the original charges of removability against him. That statutory provision states, in relevant part, that "such parole of such alien shall not be regarded as an admission of the alien" and "when the purposes of such parole shall . . . have been served the alien shall forthwith return or be returned to custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." § 1182(d)(5)A). Numerous courts have rejected Respondents' interpretation of the statute. In *Coalition*, 2025 WL 2192986, at *39, "the court determined that the statute forbids the expedited removal of noncitizens who have been, *at any time*, paroled into the United States." *See E.V.*, 2025 WL 2938594, at *3 (internal quotation marks and citations omitted). In so doing, the court explicitly rejected the argument that under § 1182(d)(5)(A), "parolees return, upon the termination or expiration of their parole, to the position of an applicant for admission standing at the threshold of entry." *See Coalition*, 2025 WL 2192986, at *24. After conducting a lengthy analysis, the court found that parolees do not fall under either provision of § 1225(b)(1), reasoning that "[a]ny other result conflicts with other aspects of the statute and regulations, Congress's evident purpose, and the ordinary meaning of the statute's

12

words." *Id*. at *30. For example, the court noted that under 8 C.F.R. § 245.1(b)(3), a noncitizen who "was paroled" remains eligible for adjustment of status, indicating that at least for some purposes, parole has ongoing legal effect even after it expires or is terminated. *Id*. at *23.

Respondents argue that this interpretation of the statute conflicts with the only published court of appeals decision addressing this issue, *Doe v. Noem*, 152 F.4th 272 (1st Cir. 2025). But that court simply found both readings of the statute "plausible." *See id.* at 288. In fact, the court acknowledged that the plaintiffs and the district court reasonably read the language in § 1225(b)(1)(A)(iii)(II) to mean that no prior recipient of parole can be subject to expedited removal proceedings and noted that there are regulations supporting this interpretation. *See id.* at 288-89 (citing 8 C.F.R. § 235.3(b)(6), which gives "a person an opportunity to establish that they were admitted or paroled into the United States following inspection at a port-of-entry before being subject to expedited removal"). To the extent the *Doe* court also found Respondents' interpretation reasonable, the Court declines to adopt that reading for the reasons aptly set forth in *Coalition.* Thus, the Court joins the "numerous district courts" that have held that neither § 1225(b)(1)(A)(i) nor § 1225(b)(1)(A)(iii)(II) authorize expedited removal of noncitizens who have been paroled into the United States, regardless of the status of that parole. *See E.V.*, 2025 WL 2938594, at *4 (listing cases).

Because the Court finds Respondents' reliance on the expedited removal process here improper due to Salgado Bustos' prior parole status, there is no need to address the second prong of 18 U.S.C. § 1225(b)(1)(A)(iii)(II), which states that the alien "has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been

13

physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." The Court notes, however, that Salgado Bustos has been continuously living in the United States for almost three years. His immigration documentation, including his work permit and record of reporting, should be sufficient to satisfy this showing.

### VII. Lawfulness of Detention under Due Process Clause

The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Due Process Clause extends to all persons regardless of status, including noncitizens. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025).

The Supreme Court has consistently held that the process due under the constitution is coextensive with the administrative immigration procedures provided by Congress. *Thuraissigiam*, 591 U.S. at 138-40. However, because Salgado Bustos challenges whether Respondent has applied the proper procedures, the Court will consider whether Salgado Bustos' due process rights have been violated.

To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319 (1976). The Court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and

14

administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335.

Salgado Bustos has a significant private interest in not being detained. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). In November 2022, when Respondent released Salgado Bustos at the border and granted him parole, Respondent determined that Salgado Bustos was not a flight risk or danger. At that time, Respondent indicated an intention not to fast-track Salgado Bustos's removal and to proceed with the standard removal process under Section 240. *See* ECF No. 8-4, PageID.104 (Call in Letter stating the reason for March 26, 2025 appointment was to "issue NTA" which is the document that begins the § 1229a proceeding; 8 C.F.R. § 1239.1(a).) In the years since that determination was made, Salgado Bustos has established ties in Michigan, attended every ICE check in, applied for asylum, and obtained a work permit.

The second factor concerns the risk of the erroneous deprivation of Salgado Bustos' liberty interest. Detention without an individualized assessment carries a high risk of erroneous determination. Here, if Respondents had conducted an assessment, they would have reviewed the documentation Salgado Bustos brought with him to his September 29, 2025 ICE check in, which established his continuous presence in the United States for over two years and the fact that he had a pending asylum application.

As for the United States' interest, the Court recognizes it has a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings. Salgado Bustos has no known criminal history and has attended all immigration hearings as required after being released on his own recognizance in November 2022.

The Court finds that all three *Matthews* factors favor Salgado Bustos and, on that basis, finds that his mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) violates the Fifth Amendment Due Process Clause.

## VIII.   Conclusion

The Court finds that the mandatory detention of Salgado Bustos is in violation of both the INA and the Due Process Clause. Accordingly,

IT IS HEREBY ORDERED that Salgado Bustos' Petition for Writ of Habeas Corpus (ECF No 1) is GRANTED. Respondent is HEREBY ORDERED to immediately release Salgado Bustos under the same conditions that existed before his detention and to return all his personal belongings.

IT IS HEREBY FURTHER ORDERED that Respondent shall file a Status Report with this Court on or before November 3, 2025 to certify compliance with this Order.

IT IS HEREBY FURTHER ORDERED that the remainder of Salgado Bustos' requested relief is DENIED as beyond the scope of the Petition.

IT IS HEREBY FURTHER ORDERED that DHS, the Secretary of DHS Kristi Noem, and the United States Attorney General Pamela Bondi are DISMISSED from the Petition.

SO ORDERED.

    s/ Nancy G. Edmunds
    Nancy G. Edmunds
    United States District Judge

Dated: October 29, 2025

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 29, 2025, by electronic and/or ordinary mail.

s/ Marlena Williams
Case Manager
